The STATE of Ohio, Appellee,

v.

BYRD, Appellant.

[Cite as *State v. Byrd,* 178 Ohio App.3d 646, 2008-Ohio-5515.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22406.

Decided Oct. 24, 2008.

</div>

Mathias H. Heck Jr., Montgomery County Prosecuting Attorney, and R. Lynn Nothstine, Assistant Prosecuting Attorney, for appellee.

Anthony R. Cicero, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Kevin Byrd Jr., was charged with multiple felony offenses in two separate indictments. Byrd subsequently entered negotiated pleas of guilty to three of the offenses charged, and the state dismissed the remaining charges.

{¶ 2} In common pleas case No. 2006CR5353/1, Byrd pleaded guilty to one count of aggravated robbery, R.C. 2911.01(A), with a firearm specification attached to that felony charge pursuant to R.C. 2941.145. Byrd was sentenced to serve a three-year prison term for the specification offense, to run prior to a

three-year term for the aggravated-robbery offense, for an aggregate term of six years.

{¶ 3} In common pleas case No. 2007CR532/2, Byrd pleaded guilty to two counts of aggravated robbery and to two counts of kidnapping, R.C. 2905.01, and the firearm specifications attached to each of those felony charges. The court merged the specifications. Byrd was sentenced to serve a three-year prison term for the specification offense, to run prior to a four-year sentence for each aggravated-robbery offense and three years for each kidnapping offense, to run concurrently, for an aggregate prison term of seven years.

{¶ 4} The aggregate six-year term in case No. 2006CR5353/1 and the aggregate seven-year term in case No. 2007CR532/2 were ordered to run consecutively, for a total prison term of 13 years. Byrd filed a timely notice of appeal.

FIRST ASSIGNMENT OF ERROR

{¶ 5} "Contrary to appellant's rights to due process and the requirements of Crim.R. 11(C)(2)(a), appellant's plea was not knowingly, intelligently and voluntarily entered because the court's colloquy never explained that his sentences would be mandatory and make him ineligible for judicial release."

{¶ 6} Aggravated robbery is a first-degree felony. R.C. 2911.01(C). Kidnapping is a second-degree felony. R.C. 2905.01(C). Per R.C. 2929.13(F)(6), a sentencing court is mandated to impose a prison term for first- and second-degree felony offenses when the offender was previously convicted of a first- or second-degree felony offense.

{¶ 7} Byrd was previously convicted of a second-degree felony offense in Montgomery Common Pleas case No. 2004CR2605. Therefore, in the present cases the prison sentences the court imposed were mandatory, and Byrd was told by the court during the Crim.R. 11 colloquy on his guilty pleas that the prison sentences were required.

{¶ 8} A court that imposes a prison sentence on an "eligible offender" may subsequently reduce the term of that sentence by ordering a judicial release. R.C. 2929.20(B). Division (A) of R.C. 2929.20 states:

{¶ 9} "As used in this section, 'eligible offender' means any person serving a stated prison term of ten years of less when either of the following applies:

{¶ 10} "(1) The stated prison term does not include a mandatory prison term.

{¶ 11} "(2) The stated prison term includes a mandatory prison term, and the person has served the mandatory prison term."

{¶ 12} Because Byrd was sentenced to mandatory prison terms, he is ineligible for judicial release. Byrd argues on appeal that his pleas of guilty were improperly accepted by the court, because the court failed to determine that

Byrd understood that he is ineligible for judicial release before it accepted his guilty pleas. Byrd relies on Crim.R. 11(C)(2)(a) and our prior holding in *State v. Pape* (Nov. 21, 2001), Clark App. No. 2000CA98, 2001 WL 1473764.

{¶ 13} Crim.R. 11(C)(2)(a) provides that in felony cases a court "shall not accept a plea of guilty or no contest without first addressing the defendant personally and * * *. [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

{¶ 14} In *Pape*, we held that though the defendant understood that he faced a mandatory prison sentence of four years, and though the court was unaware that the defendant's counsel had allegedly told defendant he would be eligible for judicial release, Crim.R. 11(C)(2)(a) required the court to determine that the defendant understood that he would be ineligible for judicial release because his sentence was mandatory. We relied on two decisions of other districts that involved failure to advise a defendant that he was ineligible for shock probation: *State v. Colbert* (1991), 71 Ohio App.3d 734, 595 N.E.2d 401, and *State v. Brigham* (Feb. 27, 1997), Franklin App. Nos. 96APA07–964 and 96APA07–970, 1997 WL 84650.

{¶ 15} *Colbert* was an appeal from an order denying a defendant's Crim.R. 32.1 motion to withdraw his guilty pleas. At the plea hearing, the prosecutor stated that defense counsel had indicated an intent to move for super shock probation and that "we will not oppose that." The court added: "For the record, the court had indicated in chambers that the court would recommend it upon proper motion." 71 Ohio App.3d at 738, 595 N.E.2d 401. The court's written entry on the plea also stated, "The Court indicated that it would allow the Defendant to be brought back from prison on motion by the Defendant after the Defendant has served six months in prison." Id. However, when the defendant moved for super shock probation, the court denied the motion. The defendant moved to withdraw his guilty pleas, and the court also denied that motion.

{¶ 16} On appeal, the defendant in *Colbert* might have relied on the "manifest injustice" standard of Crim.R. 32.1 to argue that the trial court induced his guilty pleas by misrepresenting the court's intention to grant super shock probation. Instead, the defendant relied on Crim.R. 11(C)(2)(a). Addressing that rule and its requirements, the Court of Appeals of Portage County cited the rule of substantial compliance with Crim.R. 11 announced in *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163, noting that "compliance with the rule can be based upon a consideration of the totality of the circumstances surrounding the entry of the plea." 71 Ohio App.3d at 737, 595 N.E.2d 401. The appellate court also observed that "the failure to inform the defendant of his

ineligibility for probation, under certain circumstances, may be prejudicial error requiring the vacation of the defendant's plea." Id. at 738, 595 N.E.2d 401. The appellate court then found that the statements the court made constituted such circumstances, and it reversed the trial court's order denying the defendant's motion to withdraw his guilty pleas.

{¶ 17} In *Brigham,* the defendant entered guilty pleas to having weapons under disability, with a firearms specification, and carrying a concealed weapon. When the defendant inquired of the court whether he was eligible for shock probation, the court advised him that he was ineligible during his term of three years' actual incarceration on the firearm specification. Defendant's counsel indicated he would move for shock probation after that, and stated: "I said if we were able to file, we would file, and you (the court) would consider it at that time." When the defendant asked the court whether it would consider the motion, the court replied that it would make no promises.

{¶ 18} On appeal, the Court of Appeals of Franklin County held in *Brigham* that the defendant's guilty pleas were accepted in violation of Crim.R. 11(C)(2), because his "[c]ounsel's representations were 'unfulfillable' because appellant's convictions were nonprobationable." Id. at *2. The court rejected the state's substantial-compliance argument, stating:

{¶ 19} "Crim.R. 11(C) does not require the trial court to discuss shock probation eligibility, nor does this court hold that, in every case, the trial court must advise a defendant that he is ineligible for super shock probation. On a case-by-case basis, that may or may not be necessary. We merely hold that, whe[n] a defendant asks that specific question, the defendant is entitled to an accurate answer so he can make an intelligent waiver of his rights by entering a guilty plea." Id.

{¶ 20} Unlike in *Colbert* and *Brigham,* in neither the present case nor in *Pape* was there any claim or indication that either counsel or the court had misstated or misrepresented that the defendant was eligible for judicial release when he was not.

{¶ 21} After acknowledging that fact, we wrote in *Pape* :

{¶ 22} "Nevertheless, we conclude that requiring the trial court to determine that a defendant understands he is ineligible for judicial release is a salutary interpretation of Crim.R. 11(C)(2)(a) which furthers the purpose of Crim.R. 11(C)(2)(a) that pleas of guilty and no contest be voluntarily and intelligently made, i.e., 'with full understanding of the consequences,' *Brigham, supra,* citing *Kercheval v. United States* (1927), 274 U.S. 220, 223 [47 S.Ct. 582, 71 L.Ed. 1009]." *Pape,* at *4.

{¶ 23} When *Colbert* and *Brigham* were decided, Crim.R. 11(C)(2) required the court to determine that the defendant entered his guilty or no-contest plea with the "understanding * * *, *if applicable,* that [h]e is not eligible for probation." (Emphasis added.). The rule now requires a determination of the Defendant's "understanding * * *, *if applicable,* that he is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." (Emphasis added.)

{¶ 24} On closer review, we believe that the holdings in *Colbert* and *Brigham* stand for the proposition that when a defendant's eligibility for probation or community control sanctions is misrepresented or misstated, a determination by the court that the defendant understands he is ineligible is then "applicable," and that the same applies to the defendant's ineligibility for "super shock probation" or, as it is now, judicial release. Neither *Colbert* nor *Brigham* held that in every instance in which a mandatory sentence is imposed that the court must determine that a defendant understands he is ineligible for judicial release. Indeed, *Colbert* expressly disclaimed that purpose.

{¶ 25} Furthermore, a careful reading of Crim.R. 11(C)(2)(a) convinces us that, absent some misstatement or relevant inquiry, that rule imposes no requirement relative to judicial release. The rule is concerned with and limited to sentencing alternatives that are available "at the sentencing hearing." The Staff Note to the rule states:

{¶ 26} "The 1998 amendment to Crim.R. 11(C) was made in light of changes in terminology used in the criminal law of Ohio effective July 1, 1996. Prior to this amendment, a court was required to advise a defendant facing a mandatory prison term that he or she was not eligible for probation before accepting a plea of guilty or no contest. Since 'probation' was replaced by 'community control sanctions' for felony offenses occurring on or after July 1, 1996, but continues to be used for felonies committed prior that date, neutral language requiring a court to advise a defendant of any minimum incarceration that must be imposed was inserted into the rule for simplification and universal application."

{¶ 27} The focus of Crim.R. 11(C)(2)(a) is now minimum sentences that the court is required by law to impose "at the sentencing hearing," and a defendant's understanding that when that requirement applies, he is ineligible for a more lenient sentence of probation or community-control sanctions instead. That requirement does not extend to a defendant's ineligibility for judicial release, for two reasons.

{¶ 28} First, Crim.R. 11(C)(2)(a) is concerned with sentences the court can impose, and probation and community-control sanctions are sentences the court can impose. Judicial release, on the other hand, reduces a stated prison term

that was imposed. A defendant's ineligibility for judicial release is not one of the matters regarding which Crim.R. 11(C)(2)(a) requires the court to determine a defendant's understanding concerning the sentence the court may impose when the defendant enters a plea of guilty or no contest.

{¶ 29} Second, Crim.R. 11(C)(2)(a) is expressly limited to sentences that may be imposed "at the sentencing hearing." A person is eligible for judicial release only if he is "serving a stated prison term of ten years or less." R.C. 2929.20(A). Necessarily, that prison term is one that was imposed at the sentencing hearing. Judicial release cannot be ordered instead, and because judicial release is then unavailable, no defendant can be potentially eligible for judicial release "at the sentencing hearing." Properly construed, Crim.R. 11(C)(2)(a) applies only to sentences that are available at that time, for which a particular defendant is ineligible.

{¶ 30} We hold that when a defendant on whom a mandatory prison sentence is imposed enters a plea of guilty or no contest, before accepting the plea the court must determine the defendant's understanding that the mandatory sentence renders the defendant ineligible for alternative sentences of probation or community-control sanctions. Crim.R. 11(C)(2)(a). However, though the mandatory sentence likewise renders the defendant ineligible for judicial release during his prison term, R.C. 2929.20(A), the court is not required by Crim.R. 11(C)(2)(a) to determine the defendant's understanding of that fact, absent notice of some misstatement or misrepresentation that causes the determination to be "applicable" in order to ensure that the defendant's plea of guilty or no contest is knowing, intelligent, and voluntary. *Colbert; Brigham.* To the extent that our decision in *Pape* holds otherwise, it is overruled.

{¶ 31} The first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 32} "Contrary to appellant's rights to due process the state of Ohio contaminated the sentencing process by breaching their plea agreement not to pursue sentencing enhancements, and to treat the offenses as one single offense."

{¶ 33} When defendant offered his guilty pleas on September 4, 2007, and after reviewing the terms of the plea agreement, defendant's attorney made the following representation to the court:

{¶ 34} "Additionally, your Honor, there was some discussion this morning regarding whether or not the State would be pursuing a sentencing enhancement against my client for the convictions of multiple felony ones. And the State said that they would not be pursuing that, they would treat this as one single conviction."

{¶ 35} On September 14, 2007, the state filed a memorandum in which it recommended that the court impose maximum, consecutive sentences. Byrd argues that the recommendation breached the plea agreement, requiring a reversal of defendant's sentence and vacation of his guilty pleas. *Santobello v. New York* (1971), 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427.

{¶ 36} Defendant failed to object to the state's recommendation. He therefore forfeited the error he assigns on appeal. *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306. In that case, the Supreme Court stated:

{¶ 37} "{¶ 15} Typically, if a party forfeits an objection in the trial court, reviewing courts may notice only '[p]lain errors or defects affecting substantial rights.' Crim.R. 52(B). Inherent in the rule are three limits placed on reviewing courts for correcting plain error.

{¶ 38} "{¶ 16} 'First, there must be an error, *i.e.,* a deviation from the legal rule. * * * Second, the error must be plain. To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings. * * * Third, the error must have affected "substantial rights." We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.' *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Courts are to notice plain error 'only to prevent a manifest miscarriage of justice.' *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus.

{¶ 39} "{¶ 17} The burden of demonstrating plain error is on the party asserting it. See, e.g., *State v. Jester* (1987), 32 Ohio St.3d 147, 150, 512 N.E.2d 962. A reversal is warranted if the party can prove that the outcome 'would have been different absent the error.' *State v. Hill* (2001), 92 Ohio St.3d 191, 203, 749 N.E.2d 274."

{¶ 40} Defendant argues that the state's recommendation of maximum, consecutive sentences breached the plea agreement to not seek a "sentencing enhancement" and to "treat this as one single conviction." We do not agree. The firearms specifications attached to the felony offenses to which defendant entered guilty pleas required additional sentences which, by operation of law, "enhanced" the sentences the court imposed for the felonies. There was nothing for the state to do in that respect, and recommending maximum sentence for those felony offenses within their available statutory ranges did not "enhance" them.

{¶ 41} Treating the felony sentences "as one single conviction," as defendant's counsel had characterized the state's promise, could be construed to preclude the consecutive sentences the state recommended. However, it would not exclude the possibility of maximum concurrent sentences. The maximum sentence the

court could impose for each aggravated robbery offense, a first-degree felony, R.C. 2911.01(C), is ten years. R.C. 2929.14(A)(1). The court was required to impose an additional three-year term for the firearm specification, R.C. 2941.145, even if all were merged. The aggregate sentence the court imposed was 13 years, which was within the range of punishments the state's alleged promise would permit. No manifest miscarriage of justice necessary for plain error is demonstrated.

{¶ 42} The second assignment of error is overruled. The judgment of the trial court will be affirmed.

Judgment affirmed.

WALTERS, J., concurs.

WOLFF, P.J., concurs separately.

SUMNER E. WALTERS, J., retired, of the Third Appellate District, sitting by assignment.

WOLFF, Presiding Judge, concurring separately.

{¶ 43} I concur in the majority's disposition of the first assignment, its opinion and disposition of the second assignment, and the judgment.

{¶ 44} I continue to believe that *State v. Pape* (Nov. 21, 2001), Clark App. No. 2000CA98, 2001 WL 1473764, was properly decided and that "requiring the trial court to determine that a defendant understands [that] he is ineligible for judicial release is a salutary interpretation of Crim.R. 11(C)(2)(a) which furthers the purpose of Crim.R. (C)(2)(a) that pleas of guilty and no contest be voluntarily and intelligently made, i.e., 'with full understanding of the consequences.'" Id.

{¶ 45} Nevertheless, I concur in the disposition of the first assignment because the trial court substantially complied with Crim.R. 11(C)(2)(a), which was not so in *Pape*.

{¶ 46} In *Pape*, we observed:

{¶ 47} "The trial court made no inquiry of Pape's understanding that he was not eligible for community control sanctions, which ineligibility was integral to his receiving a mandatory sentence. Nor did the written plea of guilty mention Pape's ineligibility for community control sanctions."

{¶ 48} In this case, the trial court informed Byrd that he could receive a maximum sentence of ten years for the aggravated robbery counts, with a maximum penalty of 30 years of incarceration, in addition to three years for the firearm specifications. The court further told Byrd that he could receive eight years in prison for each kidnapping count plus three years for the firearm

specifications. Byrd was also informed of the maximum fines that could be imposed. The trial court then stated: "And obviously you understand that you're not eligible for community control sanctions on the robberies and the kidnapping; do you understand that?" Byrd responded, "Yes, sir."

{¶ 49} Byrd's written plea agreements—which Byrd signed—provided that Byrd was not eligible for community control sanctions and that "[t]he prisons term(s) * * * is/are mandatory and cannot be reduced by judicial release, earned credit, or furlough."

{¶ 50} It is clear from the record that the trial court asked Byrd whether he understood that he was ineligible for community control on all of the charges, and Byrd responded, "Yes, sir." Byrd's written plea agreement also acknowledged that judicial release was unavailable. Although the trial court did not expressly inform Byrd that he was not eligible for judicial release, the trial court substantially complied with the requirements of Crim.R. 11(C)(2)(a). See *State v. Stewart* (1977), 51 Ohio St.2d 86, 5 O.O.3d 52, 364 N.E.2d 1163.